IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

JONATHAN HERNÁNDEZ-ZORRILLA,

Plaintiff,

v.

RICARDO ROSSELLÓ-NEVARES, ET AL.,

Defendants.

CIV. NO.: 19-1397 (SCC)

**OPINION AND ORDER**

Plaintiff Jonathan Hernández-Zorrilla filed this action against the Commonwealth of Puerto Rico ("the Commonwealth"); the then-governor of Puerto Rico, Ricardo Roselló-Nevares; the then-Secretary of the Public Safety Department of Puerto Rico, Héctor M. Pesquera; and various members of the Puerto Rico Police Department ("PRPD")[1] in their official and personal capacities under 42 U.S.C. § 1983 for violations of his First, Fifth and Fourteenth Amendment rights, as well as for certain state law violations. *See* Docket No. 1.[2] Pending before the Court is Co-Defendants Rosselló and Pesquera's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Docket No. 39.

---

[1] In the Amended Complaint, Plaintiff refers to the PRPD as the Puerto Rico Police Bureau ("PRPB"). For purposes of this Opinion and Order, the Court uses the more common title, "PRPD."

[2] On April 29, 2019, Plaintiff filed an Amended Complaint. *See* Docket No. 5.

Co-Defendants Rosselló and Pesquera argue that the Court lacks subject matter jurisdiction over this case, that Plaintiff has failed to adequately allege supervisory liability and that they are protected from Plaintiff's § 1983 claims by Eleventh Amendment sovereign immunity and qualified immunity. *See id.* Plaintiff opposed. *See* Docket No. 40. For the reasons stated herein, Co-Defendants Rosselló and Pesquera's Motion to Dismiss is granted in part and denied in part.

## I.   Factual and Procedural History

Plaintiff Jonathan Hernández-Zorrilla alleges that on May 1, 2018, during the Puerto Rico National March against the Oversight, Management and economic Stability Act ("PROMESA") and the Stability Board (also known as *La Junta*), he arrived at Hato Rey, San Juan, Puerto Rico to sell water and refreshments to the protestors that were participating in the event. Docket No. 5 at pg. 10. Upon witnessing a confrontation between PRPD officers and protestors, which resulted in the officers throwing tear gas into the crowd, Plaintiff ran from the scene with his partner, Katiria Fontanéz. *See id*. at pg. 11. Plaintiff was hit by the tear gas, causing respiratory issues and irritated skin and eyes. *See id.* A passer-by assisted him by pouring a liquid substance over his face and gave him cash to distribute water to others around him who were also suffering from the effects of the tear gas. *See id.* The passer-by also helped Plaintiff move out

of the fray to a corner in front of the Liberty Cable of Puerto Rico building. *See id.* at pg. 12.

Plaintiff alleges that while sitting on that corner, a masked police officer in a green uniform ordered him to move, but because he could not see or breath well due to the tear gas, Plaintiff was unable to follow the order. *See id.* According to Plaintiff, several officers also dressed in green uniforms then brutally attacked him, shooting him rubber bullets or pellets at close range. *See id.* While Plaintiff was unable to discern the identities of the officers, he alleges that the green uniforms they wore were consistent with those worn by the "Tactical Operations Unit" or "Swat Team" of the PRPD. *See id.* He alleges he received the first shot between his stomach and chest, while yelling to the officers that he had done nothing wrong and that he was only trying to sell water and refreshments. *See id.* He was then shot in the head, causing him to turn around to protect himself, at which time he was shot in the back and buttocks. Plaintiff did not resist the officers, and, after the alleged attack, he was left bleeding and laying in pain on the corner of the street. *See id.* at pg. 13.

After several minutes, Ms. Fontanéz found Plaintiff and he was eventually treated for his wounds at Doctors' Center Hospital in San Juan. *See id.* While at the hospital, Plaintiff alleges that he was interviewed by a group of PRPD officers, who noted that his wounds were consistent with those produced by rubber pellets, which they claimed are not

employed by the PRPD. *See id.* at pg. 14. However, Plaintiff alleges that the ACLU found rubber pellet casings at the scene of the protests and that the doctor that treated him commented that the wounds appeared to be "caused by the police." *Id.* While none of the projectiles penetrated his body, Plaintiff was prescribed an antibiotic for his wounds and sent home. *Id.* at pg. 15.

In the Amended Complaint, Plaintiff also provides important context for the aforementioned events: in July 2008, the United States Department of Justice ("DOJ") commenced an investigation into the practices of the PRPD. *See* Docket No. 5 at pg. 22. The result of the investigation was a report (the "DOJ Report") that found that the PRPD has regularly deprived the citizens of Puerto Rico of their constitutional rights and will continue to do so if not addressed. *Id.* In addition, on June 17, 2013, the DOJ and the government of Puerto Rico entered into a judicial settlement agreement (the "Agreement") known as the "Agreement for the Sustainable Reform of the Puerto Rico Police Department" in the U.S. District Court for the District of Puerto Rico. *Id.* at pgs. 16-17. The Agreement mandates that the PRPD shall ensure that supervisors provide close and effective supervision to each officer under their command, as well as direction and guidance to improve constitutional practice. *Id.* Moreover, supervisory personnel are to closely review and report events of use of force and other police activity. *Id.* The Agreement

also requires the filing of administrative complaints in the event of unlawful use of force as well as trainings on police constitutional practices for PRPD officers. *Id.*

Plaintiff brought this action under 42 U.S.C. § 1983, the Constitution of Puerto Rico and the Puerto Rico Civil Code against a number of state and PRPD officials, several unidentified police officers and the Commonwealth of Puerto Rico seeking declaratory and injunctive relief, as well as damages. The Commonwealth has since been dismissed on Eleventh Amendment sovereign immunity grounds. *See* Docket No. 27. Defendants Reinaldo Bermúdez, Juan Cáceres-Méndez, Luis Colón, Henry Escalera and Luis Hernández, all members of the PRPD, moved to dismiss the claims against them, arguing that Plaintiff had failed to sufficiently plead supervisory liability for the § 1983 claims and that they were immune to suit pursuant to the Eleventh Amendment and qualified immunity. *See* Docket No. 26. The Court granted the motion as to Plaintiff's § 1983 claims in Defendants' official capacity but denied the motion as to the § 1983 claims in their personal capacity. *See* Docket No. 27. The Court also dismissed Plaintiff's Fourteenth Amendment claims as well as his claims for injunctive and declaratory relief. *See id.*

## II. Standard of Review

Co-Defendants Rosselló and Pesquera move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6)

for failure to state a claim upon which relief can be granted. Because dismissal under these two rules takes into consideration "the same basic principles," we need only articulate those principles once, under the well-established Rule 12(b)(6) standard. *Lyman v. Baker,* 954 F.3d 351, 359-60 (1st Cir. 2020).

The First Circuit has devised a two-step analysis for considering a Rule 12(b)(6) motion to dismiss under the context-based "plausibility" standard established by the Supreme Court. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz c. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). While a complaint need not give detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

Second, the court must then "take the complaint's well-[pleaded] (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. Plausible means something more than merely possible, an assessment the court makes by drawing on its judicial

experience and common sense. *Id*. (citing *Iqbal*, 556 U.S. at 678-79). To survive a Rule 12(b)(6) motion, a plaintiff must allege more than a mere "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. However, the Supreme Court has clarified that it does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### III.   Analysis

Plaintiff alleges that Defendants violated his rights under the First, Fourth and Fourteenth Amendments[3] and seeks relief under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *see Lockhart-Bembery v. Sauro*, 498 F.3d 69, 74 (1st Cir. 2007). To state a valid § 1983 claim a plaintiff must allege that (1) he was deprived of a federal right; and (2) the person who deprived him of that right acted under color of state law. *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011). A defendant has acts under color of state law if he has abused his power "possessed by virtue of state law and made possible only

---

[3] The Court has already dismissed Plaintiff's claims under the Fourteenth Amendment, as that Amendment is inapplicable where a plaintiff alleges excessive force. *See* Docket No. 27, pg. 8.

because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941).

The Court will first analyze which claims are barred by state sovereign immunity as guaranteed by the Eleventh Amendment. Next, as to those claims not precluded, the Court will assess whether Plaintiff has sufficiently alleged supervisory liability as to Co-Defendants Roselló and Pesquera. The Court will then address the remaining state-law claims.

*A. Eleventh Amendment Sovereign Immunity*

The Eleventh Amendment provides that private individuals may not sue states in federal court. U.S. Const. amend. XI. *See Toledo v. Sánchez*, 454 F.3d 24, 31 (1st Cir. 2006). It is well-settled law that this state sovereign immunity under the Eleventh Amendment also extends to "alter egos" or instrumentalities" of the State. *Fresenius Med. Care Cardio Vascular Res., Inc. v. Puerto Rico and Caribbean and Cardiovascular Center Corp.*, 322 F.3d 56 (1st Cir. 2003). Specifically, this Court has repeatedly held that the PRPD is an "alter ego" of the State and thus, immune from monetary liability in federal court. *See Nieves Cruz v. Com. of Puerto Rico*, 425 F. Supp. 2d 188, 192 (D.P.R. 2006); *Sánchez Ramos v. Puerto Rico Police Dep't*, 392 F. Supp. 2d 167, 177 (D.P.R. 2005); *Cestero v. Rosa* 996 F. Supp. 133, 142-43 (D.P.R. 1998); *see also Reyes v. Supervisor of Drug Enf't Admin.*, 834 F.2d 1093, 1097-98 (1st Cir.

1987) (noting that damages against the PRPD are precluded by the Eleventh Amendment).

Likewise, state officials in their official capacities are considered instrumentalities of the State, as a suit against a state official in his or her official capacity is a suit against the State. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Pagán-García v. Rodríguez*, No. 14-1385 DRD, 2015 WL 5084640, at *6 (D.P.R. Aug. 27, 2015). In the instant case, Plaintiff is seeking monetary damages and injunctive and declaratory relief from Co-Defendants Roselló and Pesquera, who were both state officers at the time of the relevant events, in both their official and personal capacities. Applying the above principles, Eleventh Amendment Immunity bars Plaintiff's § 1983 claims seeking monetary damages against the Co-Defendants Roselló and Pesquera in their official capacity. Accordingly, Plaintiff's § 1983 claims against those two defendants in their official capacity are dismissed with prejudice.

B. *Supervisory Liability*

In contrast to the standard for liability in their official capacity, government officials can be liable for § 1983 claims in their personal capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, Co-Defendants Roselló and Pesquera argue that dismissal of Plaintiff's § 1983 claims is warranted because Plaintiff does not allege that they themselves took actions to purposely violate Plaintiff's constitutional rights.

Conversely, Plaintiff argues that the Co-Defendants Roselló and Pesquera can be held liable under a theory of supervisory liability.

For a claim of supervisory liability under 42 U.S.C. § 1983, a plaintiff must show that (1) "one of the supervisor's subordinates abridged the plaintiff's constitutional rights"; and (2) "the supervisor's action was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016).

A supervisor may not be held liable under § 1983 on the theory of *respondeat superior*, nor can his liability rest solely on his position of authority. *Ocasio-Hernández v. Fortuño*, 640 F.3d 1, 16 (1st Cir. 2011). The supervisor's liability must be premised on his own acts or omissions, but he need not directly engage in a subordinate's unconstitutional behavior. *See Guadalupe-Baez*, 819 F. 3d at 515; *Febus-Rodríguez v. Betancourt-Lebrón*, 14 F.3d 87, 91-92 (1st Cir. 1994). To establish a claim of supervisory liability, a plaintiff must show that the "official supervise[d], train[ed], or hire[d] a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Camilo-Robles v. Zapata*, 175 F.3d 41, 44

(1st Cir. 1999). Deliberate indifference[4] is shown where (1) there exists "a grave risk of harm"; (2) the official has "actual or constructive knowledge of the risk"; and (3) the official fails to take "easily available measures to address that risk." *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998). It requires a showing that "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Germany v. Vance*, 868 F.2d 9, 18 (1st Cir 1989); *see also Febus-Rodríguez,* 14 F.3d at 92. Actual notice of wrongful conduct is not required because a supervisor "may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness." *Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 582 (1st Cir. 1994); *see also Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (noting that notice may be actual or constructive).

Furthermore, a supervisor may be held liable for the constitutional violations of his subordinates where "an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation." *Maldonado v. Fontanes*, 568 F.3d 263, 275 (1st Cir.

---

[4] Co-Defendants Rosselló and Pesquera parrot the argument of their other Co-Defendants that the Supreme Court departed from the "deliberate indifference" standard as part of the analysis of supervisory liability claims under § 1983 in *Ashcroft*. Docket No. 26, pg. 8; *see Ashcroft,* 556 U.S. 662 (2009). We have already explained why we find this argument to be unfounded. *See* Docket No. 27, pg. 13 n.10.

2009) (internal quotation marks omitted); *see Guadalupe-Baez*, 819 F.3d at 515 ("Causation remains an essential element, and the causal link between a supervisor's conduct and the constitutional violation must be solid."). This affirmative link can be shown through "a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Maldonado-Denis*, 23 F.3d at 582. But it must truly show a "widespread abuse"; "isolated instances of unconstitutional activity are ordinarily insufficient to show deliberate indifference." *Ramírez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 20 (1st Cir. 2014).

The First Circuit has found that the DOJ Report is sufficient evidence of a "widespread abuse" so as to put the supervisors of the PRPD on notice of ongoing violations. *Guadalupe-Baez*, 819 F.3d at 512, 516-17. Similarly, in *Rolón-Merced v. Pesquera*, the court found that plaintiff's allegations that the PRPD's supervisors had failed to implement "nationally accepted policies," along with the officer's alleged actions of various constitutional violations, was enough to meet the affirmative link test to survive the motion to dismiss. No. 14-1757, 2017 WL 888219, at *7-8 (1st Cir. Mar 6, 2017). Because the PRPD held pertinent information as to the training programs and disciplinary actions against the officers, the plaintiff was not required to provide specific details as to each of the supervisory defendant's roles in implementing the policies and rules. *Id*. at *21.

In this case, it is not contested by the parties that Plaintiff has alleged that unnamed PRPD officers used excessive force against Plaintiff as he sold water at the National March in violation of his Fourth and First Amendment rights. Thus, the first prong of supervisory liability, requiring that one of the supervisor's subordinates abridged the Plaintiff's constitutional rights, is met. *See Guadalupe-Baez*, 819 F.3d at 515. The only issue remaining is whether the supervisors' – here, Roselló and Pesquera's – actions or inactions were affirmatively linked to the harm suffered by Plaintiff. *Id.*

Like the plaintiffs in *Guadalupe-Baez* and *Rolón-Merced*, Plaintiff has sufficiently plead facts to establish an affirmative link between the constitutional violation committed by the subordinate officers that allegedly used excessive force on Plaintiff and Co-Defendants Roselló and Pesquera at this stage. The DOJ Report and subsequent Agreement, cited by Plaintiff in the Amended Complaint, were sufficient to put the Co-Defendants Roselló and Pesquera on notice of the widespread constitutional violations being committed by PRPD officers and the risk of harm to Plaintiff, just as the Report in *Guadalupe-Baez* was sufficient to put the PRPD superintendent on notice of the widespread issue of police brutality and of his potential liability as supervisor. In the Amended Complaint, Plaintiff alleges that Co-Defendants Roselló and Pesquera were responsible for implementing and overseeing the PRPD's policies and practices for

engaging with demonstrators, as well as for the discipline, training and supervision of all employees and officers of the PRPD during the relevant time period. *See* Docket No. 5, pgs. 3, 7. More specifically, Plaintiff alleges that Pesquera, pursuant to Rosselló's instructions, gave unlawful orders to his subordinates to organize the "ambush" that led to the alleged violations of Plaintiff's constitutional and statutory rights. *See id.* at pgs. 18-19. Plaintiff also alleges that Rosselló made the decision to remove the line of policeman at the Liberty Cable building that allowed protestors to pass through, resulting in the events alleged in the Amended Complaint. *See id.* at 20. Therefore, especially in light of the DOJ Report and the Agreement, Plaintiff has plead sufficient facts at this preliminary stage to state a claim of supervisory liability against the Co-Defendants Rosselló and Pesquera in their personal capacity.

Co-Defendants Rosselló and Pesquera argue that they are protected from Plaintiff's claims against them in their personal capacities by the doctrine of qualified immunity. Officials are entitled to qualified immunity unless (1) "the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "the right at issue was 'clearly established' at the time of [their] alleged conduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Thus, the qualified immunity inquiry is highly fact dependent. Accordingly, we find that further development of the facts is necessary in order

to evaluate the merits of the qualified immunity defense here, and therefore that defense does not bar Plaintiff's claims against Co-Defendants Rosselló and Pesquera at this preliminary stage. *See Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010) ("It is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage."); *El Día v. Governor Rosselló*, 165 F.3d 106, 110-11 (1st Cir. 1999) (explaining that the qualified immunity defense may be raised at subsequent stages in the same case, even where it has been previously rejected).

After analyzing the Amended Complaint in the light most favorable to the nonmoving party, the Court finds that Plaintiff has plead sufficient facts to "raise the right to relief" under his § 1983 supervisory liability claim "above the speculative level." *Twombly*, 550 U.S. at 544. Thus, Plaintiff's § 1983 monetary claims survive as to Co-Defendants Rosselló and Pesquera in their personal capacity.

### C. Pendent State-Law Claims

Having addressed all of Plaintiff's federal-law claims, all that remains are his claims under the Puerto Rico Constitution and Puerto Rico tort law. The Court has supplemental jurisdiction to hear state-law claims when, and if, the federal court has original jurisdiction in the action and the claims "form part of the same case or controversy." 28 U.S.C. §

1367(a). Because the Court does not dismiss all of Plaintiff's federal claims, Plaintiff's state-law claims survive Defendants' Motions to Dismiss.

### IV. Conclusion

Having carefully examined the arguments raised by the parties, Co-Defendants Rosselló and Pesquera's Motion to Dismiss at Docket Number 39 is GRANTED as to Plaintiff's § 1983 claims against those Defendants in their official capacity and DENIED as to Plaintiff's § 1983 claims against those Defendants in their personal capacity and as to Plaintiff's pendent state-law claims. Plaintiff's § 1983 claims against Co-Defendants Rosselló and Pesquera in their official capacity are therefore DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 12th day of May 2021.

     S/ SILVIA CARREÑO-COLL
     UNITED STATES DISTRICT COURT JUDGE